UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:18-CR-00320 AGF/PLC |
| v. | ) | |
| | ) | |
| MICHAEL GLADNEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Report and Recommendation**

The Government charged Defendant with a violation of 18 U.S.C. § 1951(a) (Count I) and 18 U.S.C. § 924 (c)(1)(A) (Count II). Defendant moves to suppress physical evidence on the grounds that it was seized in violation of the Fourth Amendment to the U. S. Constitution.  More specifically, Defendant argues that the affidavit filed in support of the search warrant failed to establish a sufficient nexus between the evidence sought and the place to be searched. Defendant also moves to dismiss Count II, arguing that a Hobbs Act robbery does not qualify as a crime of violence as defined in Section 924(c).

**Findings of Fact**

On March 19, 2018, at approximately 12:40 p.m., four individuals entered Vincent's Jewelers in Creve Coeur, Missouri. Surveillance video from the store shows three were armed with guns and the fourth had a lead pipe.  All four wore masks, blue gloves, and dark clothes. One individual herded employees to the back of the store at gun point while the other three broke into display cases. They smashed several cases with the pipe and fired a gun through the glass of one case. As the group exited the store one individual vaulted over the top of a jewelry case and shot himself in the hand.  As he fled the store, he left behind a trail of blood. Based in part on a

height scale at the entrance to the store, police officers estimated that the individual who shot himself was over six feet tall and very heavy set. The four individuals spent under one minute in Vincent Jewelers and took over $180,000 in watches and jewelry.[1]

The four individuals departed in a black 2004 Dodge Ram pickup truck reported stolen earlier that day. A black sedan, believed to be a look-out, followed the fleeing Dodge Ram.  The next day, March 20, investigators recovered the stolen Dodge Ram in parking lot in Maryland Heights, MO.  Inside the Dodge Ram there were watch holders and blood drops on the passenger side floor and door of the vehicle.

Police officers spoke with a witness who stated that between 2:30 and 3:00 p.m. she observed two black males in dark clothes arguing loudly in the parking lot where the Dodge Ram was found.  The witness saw one individual shut the door of the Dodge Ram then enter the black sedan while the other man got in a white SUV. They drove off leaving the Dodge Ram.

Police officers collected samples of blood left at the scene and submitted those samples to the St. Louis County Police Department Crime Laboratory for analysis. The laboratory developed a DNA profile from the blood and compared it to profiles in the Combined DNA Index System ("CODIS").  The DNA profile matched Defendant.

Defendant's criminal record identified him as 6'4" and 250-275 pounds, consistent with the description of the individual who vaulted the jewelry case.  A record check revealed a white 2003 Cadillac Escalade SUV registered in Defendant's name at 1302 Dominica Drive.  Officers identified Stephanie Shanklin as the utility account holder for 1302 Dominica Drive. A previous police report described Ms. Shanklin as Defendant's girlfriend and/or the mother of his children.

---

[1] Surveillance video shows the first individual enter the store at 14:38:38 and the last individual exit at 14:39:33.

On March 29, investigators established video-surveillance of 1302 Dominica Drive and observed the Escalade registered to Defendant in the driveway. A male matching Defendant's description exited the house, entered the Escalade, and drove away. Later that day, officers conducted physical surveillance at 1302 Dominica Drive and saw three males leave the residence and enter a white GMC Terrain.  One individual matched the description of Defendant and a second fit the description of another Vincent Jeweler's suspect.  Investigators attempted to identify the individuals, but they began performing what appeared to be counter-surveillance -- driving in circles around the neighborhood and passing by and attempting to look inside the investigators' vehicle.  After briefly following the GMC Terrain, the investigators terminated their surveillance.

On March 30, ATF Special Agent Vincent Liberto applied for a search warrant for 1302 Dominica Drive seeking, among other things, "firearms, ammunition…, proceeds from a robbery, blood evidence…, [and] documentation of residency." The affidavit submitted in support of the search warrant contained detailed information from the Vincent Jeweler's surveillance video and the ensuing investigation.

In the affidavit, Agent Liberto stated that, based on DNA evidence and a known physical description, Defendant was the individual who shot himself during the Vincent Jeweler's incident.   The affidavit established that investigators observed an individual matching Defendant's description at 1302 Dominica Drive on three occasions.  Agent Liberto also averred that Defendant's Escalade was located at 1302 Dominica Drive. The undersigned judge signed the search warrant.

Officers executed the search warrant on April 4.  Officers seized a jewelry scale, jewelry, watches, U.S. currency, ammunition, Defendant's driver's license, and a box of blue gloves.

Officers arrested Defendant who was present and appeared to have a bullet wound in his right hand.

### Conclusions of Law

A.  <u>Motion to Suppress</u>

Defendant argues that the search warrant is invalid because the affidavit fails to establish a sufficient nexus between the evidence sought and the place to be searched.[2] The Government counters that the affidavit provides probable cause for the search warrant.[3]

The Fourth Amendment to the U.S. Constitution "requires the existence of probable cause before a warrant shall issue." <u>Texas v. Brown</u>, 460 U.S. 730, 735 (1983). Issuing courts "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). An affidavit must establish "evidence of a nexus between the contraband and the place to be searched." <u>United States v. Tellez</u>, 217 F.3d 547, 550 (8th Cir. 2000). When a court relies solely on an affidavit to issue a warrant "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." <u>United States v. Gladney</u>, 48 F.3d 309, 312 (8th Cir. 1995) (citations omitted). However, courts are not restricted to the bare facts of an affidavit and "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant...." <u>United States v. Keele</u>,

---

[2] Defendant concedes the affidavit links Defendant to the Vincent Jeweler's incident.

[3] The Government contends that even if the warrant lacked probable cause, investigators reasonably relied on the warrant and executed it appropriately. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (holding that "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" should not be excluded even when the search warrant is "ultimately found to be invalid."). Having found that the warrant does not lack probable cause, the Court declines to reach the issues related to <u>Leon</u>.

589 F.3d 940, 944 (8th Cir. 2009) (quoting United States v. Alexander, 574 F.3d 484, 490 (8th Cir. 2009)).

In support of his position that the affidavit fails to provide a nexus between 1302 Dominica Drive and his alleged criminal activity on March 19 at Vincent Jeweler's, Defendant relies on two drug distribution cases in which search warrants were found invalid: United States v. Rios-Uscanga, 2017 WL 1534746, (D. Minn. 2017) and United States v. Marion, 238 F.3d 965 (8th Cir. 2001).   In Rios-Uscanga, the court determined that a warrant to search the home of a suspected drug dealer's girlfriend was invalid when the court found "no assertion or even suggestion in the affidavit that the residence to be searched [was the defendant's] home." Id. at 3. The affiant saw the defendant at his girlfriend's house only once and observed no suspicious activity at that time. The affidavit did not allege that the defendant "even occasionally stayed" at the residence or that his girlfriend was involved in any criminal activity. Id. Defendant argues that as in Rios-Uscanga, the affidavit here does not allege Defendant lived or even occasionally stayed at 1302 Dominica Drive, that investigators observed criminal activity at the residence, or that his alleged girlfriend was involved in any criminal activity.

Defendant contrasts the present case with Marion, where the defendant indisputably occupied the location searched. In Marion, the district court found a warrant to search the motel room of a defendant arrested for driving with a suspended license invalid when "[n]othing in the affidavit connected the motel room with any criminal activity of any kind." United States v. Marion, 1999 U.S. Dist. LEXIS 22611, *7. In that case, an anonymous tipster told police that the defendant was staying at a particular hotel and selling drugs. Id. at 1-2. The affidavit noted that the officers found cocaine in the defendant's vehicle but failed to allege drug distribution. Id. at 6, 20. The Eighth Circuit assumed without deciding that the warrant lacked probable cause.

Marion, 238 F.3d at 968. However, the court found the executing officers' reliance on the warrant was objectively reasonable when the affiant averred that he observed the defendant make two or three brief stops consistent with drug distribution. Id. at 969-70.

The Government responds that this case is distinguishable from Rios-Uscanga and Marion because here, the affidavit alleges facts which support reasonable inferences that Defendant committed a robbery and occupied 1302 Dominica Drive. Specifically, Agent Liberto discovered that Defendant's car was registered to the address. He observed a suspect matching Defendant's description exit 1302 Dominica Drive and enter Defendant's vehicle in the driveway. The Government further contends that a judge may reasonably infer that proceeds or evidence from a robbery would be present at one of the participant's homes. Finally, the Government argues that given Defendant's ties to 1302 Dominica Drive, the nature of the crime alleged, and the suspicious activity observed at the residence, the affidavit demonstrates probable cause for the issuance of a search warrant.

A review of the record establishes the following.  The blood evidence found at Vincent's Jewelers and the surveillance from the store connected Defendant to the individuals who were involved in taking jewelry by force from Vincent Jeweler's on March 19. Defendant's vehicle registration, investigators' surveillance of 1302 Dominica Drive and previously-obtained information that Ms. Shanklin was the mother of Defendant's children and/or his live-in girlfriend, as well as the utility account at 1302 Dominica Drive, supports a reasonable inference that Defendant was linked to 1302 Dominica Drive.  In addition, officers surveilled a vehicle that contained an individual matching Defendant's description and who exited 1302 Dominica Drive. Agent Liberto, based on his experience, believed that firearms, merchandise, and other evidence of an alleged robbery at Vincent Jeweler's would not likely be disposed of quickly. Given all the

circumstances set forth, the affidavit establishes probable cause for the issuance of the 1302 Dominica Drive search warrant.   Accordingly, the Court recommends denial of Defendant's Motion to Suppress.

B.   <u>Motion to Dismiss Count II</u>

Defendant argues for dismissal of Count II on the grounds that a Hobbs Act robbery is not a crime of violence as defined in 18 U.S.C. § 924(c)(3)(A). Specifically, Defendant contends that a Hobbs Act robbery may be committed without the threatened use of physical force. The Government responds that the Eighth Circuit has held that Hobbs Act robbery is categorically a crime of violence under the § 924(c)(3)(A).

The Eighth Circuit has "expressly held that Hobbs Act robbery has 'as an element the use, attempted use, or threatened use of physical force against the person of another,' the operative term in § 924(c)(3)(A)." <u>Diaz v. United States</u>, 863 F.3d 781, 783 (8th Cir. 2017) (some internal quotations omitted) (citing <u>United States v. House</u>, 825 F.3d 381, 387 (8th Cir. 2016); <u>see also</u>, <u>United States v. Jones</u>, 919 F. 3d at 1064, 1072 (8th Cir. 2019). Defendant concedes that the Eighth Circuit "has held that a Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s elements clause" but suggests, in essence that the Eighth Circuit's analysis is flawed.   Defendant's suggestion that this Court decline to follow relevant Eighth Circuit precedent is unpersuasive, at best.[4]

---

[4] Defendant also contends that a Hobbs Act robbery does not qualify as a crime of violence under §924(c)'s residual clause because §924(c)'s residual clause is unconstitutionally vague. Defendant filed a "Notice" to the Court [ECF No. 88] that in <u>United States v. Davis</u>, No. 18-431, slip op. (U.S. Jun. 24, 2019), the United States Supreme Court held that the residual clause of §924(c) was unconstitutionally vague.  As the Government does not rely on the residual clause of §924(c) with respect to this matter, the Supreme Court's decision in <u>Davis</u> does not assist Defendant.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Michael Gladney's motions to suppress physical evidence [Doc. 66] and to dismiss the § 924(c) firearm charge [Doc. 65] be **DENIED**.

The parties are advised that they have **fourteen (14)** days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in the waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

This matter is set for trial before the Honorable Audrey G. Fleissig, United States District Judge, on <u>**September 3, 2019**</u> at <u>**9:00 a.m.**</u>

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of July, 2019

8